UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

TIMOTHY P.,[1]

                  Plaintiff,

     v.

COMMISSIONER, Social Security Administration,

                  Defendant.

Case No. 6:20-cv-02060-MK

**OPINION
AND ORDER**

---

**KASUBHAI,** United States Magistrate Judge:

       Plaintiff Timothy P., on behalf of his deceased father Wade C. P. ("Decedent"), seeks

judicial review of the final decision of the Commissioner of the Social Security Administration

("Commissioner") denying Decedent's application for disability insurance benefits ("DIB")

under the Social Security Act (the "Act"). This Court has jurisdiction to review the

Commissioner's decision under 42 U.S.C. § 405(g). All parties have consented to allow a

---

[1] In the interest of privacy, the Court uses only the first name and last name initial of non-government parties whose identification could affect Plaintiff's privacy.

Magistrate Judge to enter final orders and judgment in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c). *See* ECF No. 5. For the reasons below, the Commissioner's final decision is REVERSED and this case is REMANDED for additional administrative proceedings.

## PROCEDURAL BACKGROUND

Decedent filed an application for DIB in August 2017, alleging a disability onset date of February 28, 2016. [2] Tr. 27.[3] Decedent's application was denied at the initial level. Tr. 53. In February 2018, Decedent requested a hearing before an Administrative Law Judge ("ALJ"), Tr. 76, and a hearing was scheduled for August 21, 2019, Tr. 98. On July 4, 2019, Decedent died. Tr. 3, 127. Plaintiff, Decedent's son, became a substitute party on July 22, 2019. Tr. 3, 28. Plaintiff indicated in writing that he did not want to attend the hearing in person and requested a decision without a hearing. Tr. 27, 128.

On May 4, 2020, the ALJ issued a decision finding Decedent not disabled under the Act. Tr. 27–36. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 6–8. This appeal followed.

## FACTUAL BACKGROUND

Decedent was 57 years old on his alleged onset date and 59 years old at the time of his death. Tr. 53. He had an eleventh-grade education and had past relevant work experience as a

---

[2] Decedent also filed an application for SSI in August 2017. Tr. 27. In Plaintiff's statement of the case, Plaintiff writes that he seeks judicial review of the Commissioner's "final decision denying [Decedent's] claims for Social Security Disability Insurance Benefits *and* Supplemental Security income." Pl.'s Br. 1, ECF No. 15 (emphasis added). However, the Appeals Council correctly determined that, for the purpose of SSI, "only a surviving spouse or the parent of a disabled or blind child may qualify as a substitute party under Title XVI of the Social Security Act." Tr. 3. The Appeals Council thus dismissed Plaintiff's request for a hearing regarding the SSI application. Tr. 4. In his opening brief, Plaintiff notes that "the SSI claim is not at issue" in this case and concedes that the Decedent's death "effectively extinguished the [SSI] claim." Pl.'s Br. 1–2, ECF No. 15. As such, this Court will only address the ALJ's denial of Decedent's DIB application.

[3] "Tr." citations are to the Administrative Record. ECF No. 10.

truck driver. Tr. 178, 183. Decedent alleged disability based on depression, diabetes, pain and numbness in feet, numbness in left hand, blurry vision, severe headaches, stomach issues, and inability to stand or sit for long periods of time. Tr. 177.

## LEGAL STANDARD

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680–81 (9th Cir. 2005) (holding that the court "must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation"). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

The initial burden of proof rests on the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must prove an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of no less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920. At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141. At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.

At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose. 20 C.F.R. §§ 404.1520(e), 404.1545(b)–(c), 416.920(e), 416.945(b)–(c). At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 146 n.5. At step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the

national economy. *Id.* at 142; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner

meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Decedent met the insured requirements of the Act and

had not engaged in substantial gainful activity since his alleged onset date through the date of his

death. Tr. 29. At step two, the ALJ found that Decedent had the following severe impairments:

lumbar spine degenerative changes with mild scoliosis, history of cervical discectomy and

fusion, type 2 diabetes mellitus with diabetic polyneuropathy, hypertension, and obesity. *Id.* At

step three, the ALJ found that Decedent did not have an impairment or combination thereof that

met or medically equaled the severity of a listed impairment. Tr. 31. The ALJ found that

Decedent had an RFC to perform medium work and that:

> [Decedent] had the ability to lift, carry, push and/or pull 50 pounds
> occasionally and 25 pounds frequently. [Decedent] was able to
> stand or walk in combination for 4 hours in an 8-hour workday and
> to sit for 6 hours in an 8-hour workday. [Decedent] was able to
> frequently balance, stoop, crouch, crawl and climb ladders, ropes,
> scaffolds, ramps and stairs.

Tr. 31–32. At step four, the ALJ found that, from February 28, 2016, through July 4, 2019,

Decedent was capable of performing past relevant work as a truck driver. Tr. 35. The ALJ thus

found Decedent was not disabled under the Act. Tr. 36.

## DISCUSSION

Plaintiff asserts remand is warranted for five reasons: (1) the ALJ lacked the

constitutional authority to deny Decedent's claim; (2) the ALJ erred in assessing the severity of

Decedent's anxiety and depression at step two; (3) the ALJ failed to give clear and convincing

reasons for rejecting Decedent's subjective symptom testimony; (4) the ALJ failed to give

legally sufficient reasons for rejecting the medical opinion evidence; and (5) the ALJ erred in determining that Decedent was capable of performing his past relevant work as a truck driver.

## I.    ALJ's Constitutional Authority

Plaintiff argues that the Commissioner's appointment was unconstitutional at the time of the ALJ's decision because the Commissioner could only be removed for cause. Pl.'s Br. 10–11, ECF No. 15 (citing *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020)). Plaintiff therefore argues that the ALJ had no authority to deny the claim because the ALJ's authority derived from the Commissioner's unconstitutional appointment. *Id.*

The Ninth Circuit recently held "that the removal provision in 42 U.S.C. § 902(a)(3) violates separation of powers; that the provision is severable; and that, unless a claimant demonstrates actual harm, the unconstitutional provision has no effect on the claimant's case." *Kaufmann v. Kijakazi*, 32 F.4th 843, 850 (9th Cir. 2022). Here, Plaintiff argues only that "the ALJ simply had no authority to deny this case due to [the former Commissioner's] unconstitutional appointment." Pl.'s Br. 11, ECF No. 15. Plaintiff has neither argued nor demonstrated any actual harm. As such, the Court concludes that the removal provision has no effect on his case.

## II.    Step Two Finding

Plaintiff argues that the ALJ erred by concluding that Decedent's anxiety and depression were not severe impairments at step two of the sequential analysis. Pl.'s Br. 4–5, ECF No. 15. At step two, the Commissioner must determine whether the claimant has a "medically severe impairment or combination of impairments." *Stout v. Comm'r Soc. Sec Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *see also Keyser v. Comm'r of Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). A severe impairment "significantly limits" a claimant's "physical or mental ability to do

basic work activities." 20 C.F.R. §§ 404.1522(a), 416.922(a). The step two threshold, however,

is low:

> [A]n impairment can be considered as not severe only if it is a
> slight abnormality which has such a minimal effect on the
> individual that it would not be expected to interfere with the
> individual's ability to work . . . . [T]he severity regulation is to do
> no more than allow the Secretary to deny benefits summarily to
> those applicants with impairments of a minimal nature which could
> never prevent a person from working.

Social Security Ruling ("SSR") 85-28, *available at* 1985 WL 56856, at *2 (Nov. 30, 1984)

(internal quotations omitted). Put differently, the step two inquiry is "a *de minimis* screening

device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir.

2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996)).

The Ninth Circuit has held, however, that an error in failing to designate a specific

impairment as severe can be harmless where it does not prejudice a claimant because the ALJ

nonetheless considers the impact of the impairment in formulating the claimant's RFC. *Burch*,

400 F.3d at 682 (holding that any error in omitting an impairment at step two was harmless when

step two was resolved in claimant's favor); *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir.

2017) (finding harmless error where the ALJ neglected to find "antisocial personality disorder"

severe but nonetheless considered the claimant's "personality disorder" in crafting the RFC).

Here, the ALJ resolved step two partially in Decedent's favor by finding he had the

following severe impairments: "lumbar spine degenerative changes and mild scoliosis; history of

cervical discectomy and fusion; type 2 diabetes mellitus with diabetic polyneuropathy;

hypertension; and obesity[.]" Tr. 29. However, the ALJ also determined that,

> [b]ecause the [Decedent's] medically determinable mental
> impairments cause no more than 'mild' limitation in any of the
> functional areas <u>and</u> the evidence does not otherwise indicate that

there is more than a minimal limitation in the claimant's ability to
do basic work activities, they are considered nonsevere[.]

Tr. 31. In making this determination, the ALJ specifically cited Decedent's consultative

examination with Dr. Hardy Kade, an opinion the ALJ found persuasive with respect to

Decedent's mental impairments. Tr. 30. Furthermore, the ALJ examined the relevant criteria for

assessing mental disorders under 20 C.F.R. § 404.1520a, otherwise known as the "paragraph B"

criteria. Tr. 30–31. Applying the "paragraph B" criteria, the ALJ concluded that Decedent's

mental impairments caused no limitations in his ability to understand, remember, or apply

information; no limitations in interacting with others; mild limitations in concentrating,

persisting, or maintaining pace; and no limitation in adapting or managing oneself. *Id.*

An independent review of the record does not reveal that Decedent's mental impairments

were severe. First, Decedent's own subjective complaints do not support the alleged severity of

his depression and anxiety. Decedent regularly reported that his anxiety was "higher but

manageable." *See, e.g.*, Tr. 279, 293, 409, 530, 565, 620, 697. Decedent also reported that he

used Xanax and "only need[ed] this on occasions." *See, e.g.*, Tr. 701, 765, 792. Second, the

medical record supported the ALJ's determination that Decedent's depression and anxiety were

not severe impairments. Mark Altomari, Ph.D., and Kade Hardy, D.O., both opined that

Decedent's mental impairments were non-severe. *See* Tr. 46, 327. The ALJ found these opinions

persuasive and consistent with the overall record with respect to Decedent's mental impairments.

Tr. 30–31.

The ALJ's determination that Decedent's mental impairments were non-severe is

supported by substantial evidence. The ALJ's step-two finding is affirmed.

### III.    Subjective Symptom Testimony

Plaintiff next argues that the ALJ improperly rejected Decedent's subjective symptom testimony. Pl.'s Br. 5–7, ECF No. 15. When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281 (internal citation omitted). A general assertion that the claimant is not credible is insufficient; instead, the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (internal citation omitted). If the ALJ's finding on the claimant's subjective symptom testimony is "supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (internal citation omitted).

Social Security Ruling ("SSR") 16-3p provides that "subjective symptom evaluation is not an examination of an individual's character," and requires that the ALJ consider all the evidence in an individual's record when evaluating the intensity and persistence of symptoms.[4] SSR 16-3p, *available at* 2016 WL 1119029, at *1–2. The ALJ must examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by

---

[4] Effective March 28, 2016, SSR 16-3p superseded and replaced SSR 96-7p, which governed the assessment of claimant's "credibility." *See* SSR 16-3p.

medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4.

Decedent died before the hearing. In his function report, Decedent indicated that his feet were numb and kept swelling. Tr. 199. Decedent also indicated that his conditions affected his ability to stand, walk, sit, kneel, climb stairs, remember, concentrate, and complete tasks. Tr. 204. Decedent testified that, due to his conditions, he was no longer able to drive a truck. Tr. 200. Decedent also indicated that he did not pass a physical examination required for his commercial driver license ("CDL"). Tr. 199, 327. Decedent testified that he stayed home a lot more due to his conditions. Tr. 203. During medical examinations, Decedent reported that his foot pain and numbness as well as his back pain are "a lot worse with prolonged periods of sitting and/or standing." Tr. 325. Decedent estimated that he could sit for approximately one to two hours at a time; stand for one-half hour at a time; and walk for one-half hour at a time and walk approximately one to two blocks before needing to rest. Tr. 326.

Here, the ALJ rejected Decedent's subjective symptom testimony. Tr. 32–33. The Commissioner asserts that the ALJ supplied three valid rationales that undermined Decedent's subjective complaints: (A) pain relief from treatment; (B) lack of treatment; and (C) an inconsistency with the medical record. Def.'s Br. 19–21, ECF No. 18.

### A.    Improvement with Treatment

The Commissioner asserts the ALJ properly rejected Decedent's testimony because Decedent's medical records "show[ed] that [Decedent's diabetes] improved and was reasonably controlled with treatment, which undermines h[is] claim of disabling limitations." Def.'s Br. 19, ECF No. 18. The effectiveness of treatment is a relevant factor an ALJ may consider when evaluating subjective symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv–v),

416.929(c)(3)(iv–v). "Impairments that can be controlled effectively with medication are not disabling" under the Act. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (citations omitted); *see also Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (claimant's physical ailments were adequately treated with over-the-counter pain medication).

Here, however, the medical record establishes that Decedent still experienced numbness despite his medical treatment. In October 2017, Decedent reported that he continued to have neuropathy-type symptoms, particularly in his bilateral feet with his left foot being much worse than his right. Tr. 325. His examining doctor noted that his "diabetic neuropathy . . . appears to be getting worse." Tr. 327. In January 2019, Decedent reported ongoing pain and numbness in both of his legs. Tr. 697. In May 2019, despite obtaining new inserts for his shoes, Decedent reported ongoing numbness in his feet. Tr. 765. Furthermore, the Commissioner cites treatment records showing that Decedent's diabetes mellitus was "well controlled." Def.'s Br. 19, ECF No. 18 (citing Tr. 270, 273, 301, 305, 770, 796). A full review of those same records also reveals that Decedent's treating doctor noted that Decedent's "[d]iabetes mellitus control [was] uncertain." *See, e.g.*, Tr. 282, 295, 412, 442, 534, 568, 624, 650. Decedent's treating doctor diagnosed him with uncontrolled diabetes with neuropathy. Tr. 337. Thus, the treatment record was not a clear and convincing reason to reject Decedent's testimony.

## B.    Lack of Treatment

The Commissioner next asserts that the ALJ properly rejected Decedent's testimony based on minimal treatment. Def.'s Br. 19, ECF No. 18. The ALJ noted that "[t]here is evidence of very little to no treatment in the record for the claimant's lumbar and cervical spine." Tr. 33. The Commissioner specifically argues that Decedent's "lack of consistent treatment for the

problems affecting his lumbar and cervical spine was both permissible and a legally sufficient basis for discounting [Decedent's] subjective complaints." Def.'s Br. 19, ECF No. 18.

In some circumstances, a claimant's treatment record can form the basis upon which to reject a claimant's testimony. *See, e.g.*, *Parra*, 481 F.3d at 750–51 (noting that "conservative treatment" was sufficient to discount the claimant's testimony regarding allegedly disabling pain); *Molina v. Astrue*, 674 F.3d 1104, 1113–14 (9th Cir. 2012) ("[A] claimant's failure to assert a good reason for not seeking treatment . . . can cast doubt on the sincerity of the claimant's pain testimony.") (citation omitted). However, adjudicators are required to consider "any explanations that the individual may provide, or other information in the case record, that may explain" the claimant's failure to follow a treatment plan. *Orn*, 495 F.3d at 638 (quotation omitted).

The Ninth Circuit has held previously that "although a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." *Carmickle v. Comm'r, Soc. Sec. Admin.,* 533 F.3d 1155, 1162 (9th Cir. 2008); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (holding that "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding unless one of a "number of good reasons for not doing so."). When denying benefits based on noncompliance with treatment, the ALJ "must examine the medical conditions and personal factors that bear on whether [a claimant] can reasonably remedy [their] impairment." *Byrnes v. Shalala,* 60 F.3d 639 (9th Cir. 1995) (internal quotations omitted). Moreover, the Ninth Circuit has been clear that "[d]isability benefits may not be denied because of the claimant's

failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

First, the record reflects Decedent's difficulty in securing and maintaining insurance coverage. *See Orn*, 495 F.3d at 638 (quotation omitted). In January 2019, Decedent's medical provider reported that Decedent was "trying to get on insurance to help him out more" and that Decedent had been "feeling depressed due to his pain and fighting [with his] insurance." Tr. 697. In May 2019, Decedent's medical provider reported that Decedent had not been to a medical appointment "due to him not having any insurance." Tr. 765. That same month, Decedent's medical provider also reported that Decedent declined preventative screening "due to lack of insurance." Tr. 770.

Second, the record reflects that Decedent underwent an anterior cervical discectomy fusion surgery in 2009. *See, e.g.*, Tr. 269. The ALJ noted that "the evidence of record shows the claimant was status post a cervical discectomy and fusion in 2009 and demonstrated evidence of mild spondylosis, facet degenerative joint disease at all levels, mild levoscoliosis and degenerative joint disease of the sacroiliac joints[.]" Tr. 33. The ALJ further noted that in physical examinations, Decedent's "range of motion, strength and reflexes were normal in the upper extremities and spine." *Id.* It is unclear how findings of normal range of motion, strength, and reflexes in the upper extremities and spine undercut Decedent's complaints of back pain during prolonged periods of sitting or standing. *See, e.g.*, Tr. 325.

After a review of the ALJ's decision, there is no indication that the ALJ adequately considered information in the medical record indicating Decedent's reasons for not seeking more aggressive treatment. As such, conservative treatment was not a clear and convincing reason to reject Decedent's testimony.

### C.    Medical Record

As noted, the Commissioner asserts that the ALJ properly discounted Decedent's allegations because they were inconsistent with the objective medical evidence. Def.'s Br. 21, ECF No. 18. In some circumstances, an ALJ may reject subjective complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

An independent review of the record establishes that Decedent's subjective complaints are amply supported in the record. Dr. Hardy, Plaintiff's examining doctor, opined that "the total hours the patient can work standing and/or walking with normal breaks is probably two hours at maximum, requiring the patient to sit and stand periodically secondary to his neuropathy-type symptoms." Tr. 327. Dr. Hardy further opined that "[i]n an eight-hour work day [Decedent] can probably sit for no more than two to three hours at a time, periodically alternating sitting and standing to relieve pain and discomfort." *Id.* In addition, Dr. Buckner, Decedent's treating physician, opined that Decedent experiences numbness and burning in his feet, tested positive for monofilaments, and had a diagnosis of uncontrolled type 2 diabetes with neuropathy. Tr. 337. Dr. Buckner estimated that Decedent could sit for two hours before needing to change positions, and could stand for only 20 minutes before needing to sit down. Tr. 338. As such, the medical record in this case was not a clear and convincing reason to reject Decedent's testimony on his subjective complaints.

## IV.     Medical Opinion Evidence

As noted, Plaintiff challenges the ALJ's assessment of the medical opinion evidence.

Pl.'s Br. 7–9, ECF No. 15.

For disability claims filed on or after March 27, 2017, new regulations for evaluating

medical opinion evidence apply. *Revisions to Rules Regarding the Evaluation of Medical*

*Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at *5867–68 (Jan. 18,

2017). The Ninth Circuit recently considered and discussed the impact of the new regulations on

existing Circuit caselaw. *See Woods v. Kijakazi*, No. 21-35458, 2022 WL 1195334, at *3 (9th

Cir. Apr. 22, 2022).

Under the previous regulations, in order to reject either a treating or an examining

physician's opinion, ALJs were required to "provide 'clear and convincing reasons,' if the

opinion [was] uncontradicted by other evidence, or 'specific and legitimate reasons'

otherwise[.]" *Id.* In *Woods*, the Ninth Circuit held that "[t]he revised social security regulations

[were] clearly irreconcilable with [its] caselaw according special deference to the opinions of

treating and examining physicians on account of their relationship with the claimant." *Woods*,

2022 WL 1195334, at *4. "Insisting that ALJs provide a more robust explanation when

discrediting evidence from certain sources necessarily favors the evidence from those sources—

contrary to the revised regulations." *Id.*

Under the revised regulations, ALJs must consider every medical opinion in the record

and evaluate each opinion's persuasiveness. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The two

most important factors in doing so are the opinion's "supportability" and "consistency." *Id.* ALJs

must articulate "how [they] considered the supportability and consistency factors for a medical

source's medical opinions . . . in [their] decision." 20 C.F.R. §§ 404.1520c(b)(2),

416.1520c(b)(2). With regard to supportability, the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [their] medical opinion[], the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, the "more consistent a medical opinion[] is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

In crafting their disability determination decisions, the Ninth Circuit has instructed ALJs "to use these two terms of art—'consistent' and 'supported'—with precision." *Woods*, 2022 WL 1195334, at *7 n.4. Thus, even under the new regulations "an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* at *6.[5]

Although *Woods* made clear that the hierarchy among physician's opinions no longer applies in this Circuit, the court did not address whether the new regulations upend the entire body of caselaw relating to medical evidence. The Court therefore concludes that the reasoning from cases unrelated to the treating physician rule remains good law. For example, it remains true that ALJs may not cherry-pick evidence in discounting a medical opinion. *See Ghanim*, 763 F.3d at 1162; *see also Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (reversing ALJ's selective reliance "on some entries in [the claimant's records while ignoring] the many

---

[5] The new regulations also remove an ALJ's obligation to make specific findings regarding relationship factors, which include: the relationship with claimant; length of treating relationship; frequency of examinations; purpose of the treatment relationship; the existence of a treatment relationship; examining relationship; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(c)(3)–(5), 416.920c(c)(3)–(5); *Woods*, 2022 WL 1195334, at *6. However, a discussion of relationship factors may be appropriate where "two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Woods*, 2022 WL 1195334, at *6 (citation omitted).

others that indicated continued, severe impairment"). Nor may ALJs dismiss a medical opinion

without providing a thorough, detailed explanation for doing so:

> To say that medical opinions are not supported by sufficient
> objective findings or are contrary to the preponderant conclusions
> mandated by the objective findings does not achieve the level of
> specificity our prior cases have required, even when the objective
> factors are listed seriatim. The ALJ must do more than offer [their]
> own conclusions. [They] must set forth [their] own interpretations
> and explain why they, rather than the doctors', are correct.

*Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999) (citation

omitted). In other words, while the new regulations eliminate the previous hierarchy of medical

opinion evidence that gave special status to treating physicians, ALJs must still provide sufficient

reasoning for federal courts to engage in meaningful appellate review. *See Bunnell v. Sullivan*,

947 F.2d 341, 346 (9th Cir. 1991) (explaining that "a reviewing court should not be forced to

speculate as to the grounds for an adjudicator's rejection" of certain evidence); *see also Treichler*

*v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014) ("Although the ALJ's

analysis need not be extensive, the ALJ must provide some reasoning in order for us to

meaningfully determine whether the ALJ's conclusions were supported by substantial

evidence."). With these principles in mind, the Court turns to the ALJ's assessment of the

medical evidence.

### A.      Kade Hardy, D.O.

Kade Hardy, D.O., served as Decedent's examining doctor. Tr. 325–33. Dr. Hardy opined

that "the total hours [Decedent] can work standing and/or walking with normal breaks is

probably two hours at maximum, requiring [Decedent] to sit and stand periodically secondary to

his neuropathy-type symptoms." Tr. 327. Dr. Hardy further opined that "[i]n an eight-hour work

day [Decedent] can probably sit for no more than two to three hours at a time, periodically

alternating sitting and standing to relieve pain and discomfort." *Id.* Dr. Hardy noted that, "[i]n terms of his pushing and pulling restrictions, including operation of hand and foot controls, he would be limited in his lower extremities secondary to his neuropathic symptoms." *Id.* Dr. Hardy concluded that, "[b]ased on [Dr. Hardy's] observations and physical exam findings as well as [Decedent's] medical history, his ability to perform and sustain work-related functions such as sitting, standing, walking, lifting, carrying, and handing objects will be significantly limited secondary to all of his comorbidities." *Id.*

The ALJ rejected Dr. Hardy's opinion because "the limitations on lift and carry and 2 hours of standing/walking are not consistent with other medical evidence of record, which do not show evidence of the limping that was manifested on the consultative examination." Tr. 34. The Commissioner asserts this was proper because the objective record did not support Dr. Hardy's assessments. Def.'s Br. 23, ECF No. 18. Specifically, the Commissioner points to the conclusions of Kevin Threlkeld, M.D.,— a state agency reviewing physician who reviewed the record evidence—in the Disability Determination Explanation for Decedent's DIB claim at the Initial level. *Id.*; *see also* Tr. 41–52.

An independent review of the record reflects that Dr. Hardy's opinion is amply supported by the record. First, Dr. Hardy's opinion is supported by the medical record. *See, e.g.*, Tr. 282, 295, 412, 442, 534, 568, 624, 650 (reporting that diabetes mellitus control was uncertain); Tr. 337 (diagnosing Decedent with uncontrolled diabetes with neuropathy). In addition, Dr. Hardy's opinion is supported by Decedent's subjective symptom testimony. *See, e.g.*, Tr. 199 (testifying that, due to his conditions, he failed a physical examination required for his CDL); 697, 765 (reporting pain and numbness in feet). As such, the ALJ's rejection of Dr. Hardy's opinion is not supported by substantial evidence. *See Woods*, 2022 WL 1195334, at *6 ("Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence.").

### B.    James Buckner, D.O.

James Buckner, D.O., served as Decedent's treating physician. Tr. 336–39. Dr. Buckner opined that Decedent experienced numbness and burning in his feet, tested positive for monofilaments, and had a diagnosis of uncontrolled type 2 diabetes with neuropathy. Tr. 337. Dr. Buckner estimated that Decedent could sit for two hours before needing to change positions, and could stand for only 20 minutes before needing to sit down. Tr. 338. Dr. Buckner also opined that Decedent would need to shift positions at will from sitting, standing, and walking. *Id.* Dr. Buckner also estimated Decedent would need to take unscheduled breaks every hour for five to ten minutes due to pain, paresthesia, and numbness. Tr. 339. Dr. Buckner opined that Decedent would be off task or slower for 20% of a typical eight-hour workday, and that Decedent would need to miss four days per month due to his conditions. *Id.*

The ALJ rejected Dr. Buckner's opinion because the "limitations regarding postural activities, use of the hands and arms, standing, breaks, elevation, being off task and absences are not supported by the claimant's medical evidence[.]" Tr. 35. The Commissioner asserts this was proper because the objective record did not support Dr. Buckner's assessments. Def.'s Br. 24, ECF No. 18. Specifically, the Commissioner points to unremarkable examination findings. *Id.*

An independent review of the record reflects that Dr. Buckner's opinion is amply supported by the record. First, Dr. Buckner's opinion is supported by the medical record. *See, e.g.*, Tr. 282, 295, 412, 442, 534, 568, 624, 650 (reporting that diabetes mellitus control was uncertain); 327 (noting that Decedent's ability to perform and sustain work-related functions will be significantly limited due to his comorbidities). In addition, Dr. Buckner's opinion is supported

by Decedent's subjective symptom testimony. *See, e.g.*, Tr. 199 (testifying that, due to his

conditions, he failed a physical examination required for his CDL); 325 (reporting neuropathy-

type symptoms in his feet); 697, 765 (reporting pain and numbness in feet). As such, the ALJ's

rejection of Dr. Buckner's opinion is not supported by substantial evidence. *See Woods*, 2022

WL 1195334, at *6 ("Even under the new regulations, an ALJ cannot reject an examining or

treating doctor's opinion as unsupported or inconsistent without providing an explanation

supported by substantial evidence.").

## V.    RFC Formulation

The RFC is the most a person can do in light of his physical or mental impairments. 20

C.F.R. §§ 404.1545, 416.945. The RFC assessment must be "based on all of the relevant medical

and other evidence," including the claimant's testimony as well as that of lay witnesses. 20

C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Put differently, the "RFC assessment must contain a

thorough discussion and analysis of the objective medical and other evidence, *including the

individual's complaints of pain and other symptoms*." *Laborin v. Berryhill*, 867 F.3d 1151, 1153

(9th Cir. 2017) (emphasis in original) (bracketing and quotation marks omitted) (citing SSR 96-

8p, *available at* 1996 WL 374184).

Plaintiff asserts that the ALJ's RFC formulation failed to account for Decedent's

testimony that he could not perform his past relevant work due to failing a physical examination

required for his trucking license. Pl.'s Br. 9–10, ECF No. 15; *see also* Tr. 178.

The ALJ failed to supply legally sufficient reasons for rejecting Decedent's subjective

symptom testimony and the medical opinion evidence. The limitations described therein were

required to be included in Decedent's RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

Cir. 2007) ("[T]he ALJ failed to provide clear and convincing reasons for finding [the

claimant's] alleged pain and symptoms not credible, and therefore was required to include these limitations in his assessment of [the claimant's] RFC."). As such, the ALJ's RFC assessment failed to account for all of the relevant evidence in the record and the ALJ's corresponding step four determination was not supported by substantial evidence.

## VI.    Remand

A reviewing court has discretion to remand an action for further proceedings or for a finding of disability and an award of benefits. *See, e.g.*, *Stone v. Heckler*, 761 F.2d 530, 533 (9th Cir. 1985). Whether an action is remanded for an award of benefits or for further proceedings depends on the likely utility of additional proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). In determining whether an award of benefits is warranted, the court conducts the "three-part credit-as-true" analysis. *Garrison*, 759 F.3d at 1020. Under this analysis the court considers whether: (1) the ALJ has failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed and further proceedings would serve no useful purpose; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *See Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015). Even if all the requisites are met, however, the court may still remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled[.]" *Garrison*, 759 F.3d at 1021. "Serious doubt" can arise when there are "inconsistencies between the claimant's testimony and the medical evidence," or if the Commissioner "has pointed to evidence in the record the ALJ overlooked and explained how that evidence casts serious doubt" on whether the claimant is disabled under the Act. *Dominguez*, 808 F.3d at 407 (citing *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014)) (internal quotations omitted).

Here, the first requisite is met based on the ALJ's harmful legal errors. As discussed above, the ALJ failed to provide reasons supported by substantial evidence for discrediting Decedent's subjective symptom testimony and the medical opinion evidence. The Court notes that the ALJ did not find persuasive either of the two doctors who actually treated or examined Decedent.

As to the second requisite, the Ninth Circuit has held that remanding for proceedings rather than for an immediate payment of benefits serves a useful purpose where "the record has [not] been fully developed [and] there is a need to resolve conflicts and ambiguities." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (internal quotations and citations omitted). Here, the record would benefit from further development. Specifically, the Court finds that the record would benefit from additional vocational expert testimony based on a reformulated RFC.

Accordingly, this case is remanded for further administrative proceedings to: (1) conduct a *de novo* review of the medical opinion evidence; (2) reevaluate Decedent's subjective symptom testimony; (3) obtain additional VE testimony based on a reformulated RFC; and (4) conduct any further necessary proceedings. *See Burrell*, 775 F.3d at 1141.

///

///

///

**CONCLUSION**

For the reasons above, the Commissioner's decision was not based on  substantial

evidence. Accordingly, the Commissioner's decision is REVERSED and this case REMANDED

pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this

Opinion and Order.

IT IS SO ORDERED.

DATED this <u>13th</u> day of June 2022.

s/ Mustafa T. Kasubhai<br>
MUSTAFA T. KASUBHAI (He / Him)<br>
United States Magistrate Judge
